Justice ALBIN,
dissenting and concurring.
The facts here present the quintessential case of lack of informed consent. Dr. Kaul did not have the medical malpractice insurance required by law to perform the invasive surgical procedure on his patient, plaintiff James Jarrell. Performing the procedure without the requisite insurance constituted professional misconduct. Yet, Dr. Kaul never explained any of this to his patient, presumably because plaintiff never would have agreed to the procedure had he been fully informed.
Dr. Kaul failed to disclose material facts to his patient. He denied plaintiff the right to decide whether a financially incompetent — or worse yet, a professionally incompetent — physician should perform invasive surgery on him. Dr. Kaul was credentialed only as an anesthesiologist; he was not insured to perform spinal surgery.
A logical extension of our informed-consent jurisprudence would permit a cause of action if a plaintiff can establish four elements: (1) the physician was uninsured to perform the medical procedure, (2) the physician failed to inform the patient that he was uninsured, (3) the patient would not have undergone the procedure if properly informed, and (4) the plaintiff can prove damages. The majority, however, is not willing to take this natural step in the development of our common law.
A cause of action for lack of informed consent would recognize that a physician cannot hide material facts and that the patient has a right to make critical choices concerning his health. No *326 reasonable patient would consent to spinal surgery knowing that his physician lacks malpractice insurance to perform that procedure. Because the majority is unwilling to find that Dr. Kaul breached a common-law duty by failing to disclose to the patient his lack of insurance to perform spinal surgery, I respectfully dissent. I concur in the remainder of the Court’s opinion.
I.
A physician is statutorily required to maintain medical malpractice liability insurance. N.J.S.A. 45:9-19.17. The purpose of the law is “to ensure the citizens of the State that they will have some recourse for adequate compensation in the event that a physician or podiatrist is found responsible for acts of malpractice.” Assembly Health Comm., Statement to S. 267 (Sept. 19, 1996). A physician who does not maintain medical malpractice liability insurance for a procedure he performs is subject to discipline for professional misconduct — discipline that includes possible revocation or suspension of his license to practice medicine. See N.J.S.A. 45:1-21; N.J.A.C. 13:35-6.18(e). The public therefore presumes that a physician is insured to perform a surgical procedure.
Physicians are obligated to provide information that is material to a reasonable patient’s ability to make an informed decision about whether to proceed with a course of treatment or procedure. Matthies v. Mastromonaco, 160 N.J. 26, 36, 733 A.2d 456 (1999). The doctrine of informed consent finds its source in the concept of negligence. Largey v. Rothman, 110 N.J. 204, 208, 540 A.2d 504 (1988). In an informed-consent analysis, the dominant issue is “whether the physician adequately presents the material facts so that the patient can make an informed decision.” Matthies, supra, 160 N.J. at 36, 733 A.2d 456. A “ ‘physician violates his duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment.’” Largey, supra, 110 N.J. at 208, 540 A.2d 504 (quoting Salgo v. Leland Stanford, Jr. Univ. Bd. of Trustees, 154 Cal.App.2d 560, 317 P.2d *327 170, 181 (Cal.Dist.Ct.App.1957)); see also In re Conroy, 98 N.J. 321, 346, 486 A.2d 1209 (1985) (explaining that under informed-consent doctrine, “no medical procedure may be performed without a patient’s consent, obtained after explanation of the nature of the treatment, substantial risks, and alternative therapies” (internal quotation marks omitted)). The informed-consent doctrine is about patient autonomy — the right of the patient to make decisions that intimately and materially concern his health and life. Rothman, supra, 110 N.J. at 209, 540 A.2d 504; see also Howard v. Univ. of Med. & Dentistry of N.J,, 172 N.J. 537, 557, 800 A.2d 73 (2002) (recognizing informed-consent claim when objectively reasonable patient would not consent to procedure if physician’s inexperience had been known to patient). The physician cannot arrogate to himself decisions that vitally concern the patient’s health.
A patient has a right to know whether a physician performing a procedure is in a financially responsible position in the event that the patient suffers injuries due to medical malpractice. A reasonable patient would consider a physician’s lack of insurance a material factor in making a decision whether to have spinal surgery. That is so because an uninsured physician provides no financial safety net for a patient who is harmed by the physician. Lack of insurance also may suggest that the carrier considered the physician incompetent to perform the procedure.
If the physician does not tell the patient that he is not lawfully permitted to perform the uninsured medical procedure, then the patient should be able to file a cause of action for lack of informed consent, provided he would not have undergone the procedure had he been properly informed and he can prove damages.
II.
The goals of tort law are to deter persons from engaging in unreasonable conduct and to compensate victims for the damage done to them by tortfeasors. The application of the common law to this claim of lack of informed consent would have been an *328 unremarkable extension of our jurisprudence. It is remarkable that a patient has no cause of action against a physician who performs a surgical procedure under the false pretense that he is insured.
For those reasons, I respectfully dissent in part and concur in part.
For reversal in part/affirmance in part/remandment — Justices LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON and Judge CUFF (temporarily assigned) — 5.
For concurrence in part/dissent in part — Chief Justice RABNER and Justice ALBIN — 2.